IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MICHAEL GLASGOW and NANCY GLASGOW, individually and as parents and next friends of R.G., a minor child, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | No. CIV-04-254-M |
| INDEPENDENT SCHOOL DISTRICT NO. I-29 OF McCLAIN COUNTY, STATE of OKLAHOMA a/k/a BLANCHARD SCHOOL DISTRICT et al., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on the Motion for Summary Judgment filed pursuant to Rule 56, F.R.Civ.P., by defendants Dwight Myers, Glen Castle, Oscar Brooks, Michael Whaley, Janet Wilson, Darren Yarbrough and Mark Brown.   Plaintiffs Michael Glasgow and Nancy Glasgow, individually and as parents and next friends of R.G., a minor child, have responded to the motion, and the defendants have filed a reply.  Based upon the record, the Court makes its determination.[1]

---

[1]The Court is mindful that the plaintiffs have moved to strike certain exhibits attached to the defendants' Motion for Summary Judgment.  Resolution of the motion does not require a decision on the plaintiffs' Motion to Strike, because as the defendants have noted, these exhibits are not determinative of their request for judgment as a matter of law.  Furthermore, the Court notes that one challenged exhibit, Exhibit No. 8, is listed by the plaintiffs themselves on their exhibit list filed on December 1, 2004.

Furthermore, the Court finds resolution of the motion cannot wait until the defendants' Motion to Exclude Testimony and Opinions of Kathy Karmid is resolved.  The plaintiffs have requested and been granted an extension of time in which to respond to such motion and in light of the pending trial docket, the Court finds a decision on the defendants' Motion for Summary Judgment is warranted without further delay.

In doing so, the Court notes that each movant has been sued individually as well as in his or her official capacity. Myers is superintendent of Independent School District No. I-29 also known as Blanchard School District ("School District"); Castle is principal of Blanchard High School ("Blanchard High"), and the remaining individual defendants are members of the School District's Board of Education ("School Board"). In determining the liability, if any, of these defendants, the Court is mindful that individual-capacity "suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law," Kentucky v. Graham, 473 U.S. 159, 165 (1985)(citation omitted), and that "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an official is an agent.'" Id. (quoting Monell v. New York City Department of Social Services, 436 U.S. 658, 690 n.55 (1978)). The distinction is important because suits against a government official in his or her individual and official capacities give rise to different theories of liability and different defenses.

In this instance, because the School District has been named as a defendant, any official-capacity suit against these individual defendants is redundant. Accordingly, the Court has considered only whether the movants are entitled to judgment as a matter of law in their individual capacities.

Certain events giving rise to this lawsuit are highly disputed. In particular, there is disagreement regarding R.G.'s allegations that D.H., also a minor, stood behind R.G. and grabbed R.G.'s genitals, that D.H. repeatedly made movements that the parties have described as "humping motions" behind R.G. and that D.H. made sexually derogatory remarks to R.G. and told him, inter alia, that "I got me a new bitch." Deposition of R.G. (October 21, 2004) at 133, line 12. The following, however, are undisputed for purposes

2

of the instant motion.

1.  R.G., who has been diagnosed as dyslexic, attended school with D.H.

2.  While enrolled as eighth and ninth graders, D.H. threatened R.G. and threw a cup of ice at him.

3.  R.G. did not report these incidents.

4.  Prior to, and during, his tenth grade year at Blanchard High, R.G. observed D.H. stand behind other students and perform "humping motions." These students complained to each other and to R.G., but they did not complain about D.H.'s behavior to school officials.

5.  On September 24, 2002, R.G. reported to a school counselor that a group of males riding in a truck yelled obscenities at him and chased after him.

6.  The counselor in turn reported the incident to Castle, and on September 25, 2002, Castle called three males believed to be involved in the incident into his office.

7.  On September 25, 2002, R.G., accompanied by his mother, Nancy Glasgow, and Detective Randy Johnson,[2] a police officer employed by the City of Blanchard, met with Castle.  At that time and for the first time, R.G. complained to Castle about a previous incident at school involving R.G. and D.H., during which both males were partially clothed and D.H. made "humping motions."

8.  Castle admonished D.H. in the presence of his mother, who had been advised of the matter.  D.H. apologized to R.G. about the truck incident, but he made no apology

---

[2]In his deposition, R.G. testified that due to embarrassment, Detective Johnson was the first person he ever told that D.H. had made "humping motions" or grabbed his genitals.  R.G. further testified that he told Detective Johnson that this had happened only one time. Deposition of R.G. (October 21, 2004) at 167-69.

about any other behavior, which he described as "a locker room prank."  Deposition of Nancy C. Glasgow (January 13, 2004) at 214, line 19.

9.  Both R.G. and D.H. played on the Blanchard High football team, and further discipline was left to the football coach, who put D.H. through additional activities after football practice and who advised D.H. that if any other complaints and/or allegations were made, he would be removed from the football team.

10.  After that date, neither D.H. nor his friends directly threatened or harassed R.G. D.H.'s friends indirectly threatened R.G., but these threats were not reported by R.G. to school officials.

11.  Other students likewise taunted R.G., but again he did not complain to school officials.  Nancy Glasgow did advise Castle that R.G. would not be participating in football.

12.  In October 2002, R.G. withdrew from Blanchard High and began attending Dibble High School.

The Glasgows brought this action on March 9, 2004, and in their amended complaint filed on March 26, 2004, they alleged that the School District and the individual defendants had violated certain federal and state laws.  The movants have challenged each cause of action.

The Glasgows have first alleged that the individual defendants violated Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq., because they knew or should have known of D.H.'s inappropriate conduct and failed to take action to protect R.G. both prior to, and after, such conduct.  In particular, the Glasgows have alleged that these defendants were deliberately indifferent to R.G.'s safety and recklessly disregarded his right to be free from sexual assault and harassment.

4

Title 20, section 1681(a) of the United States Code provides in pertinent part that

"[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

20 U.S.C. § 1681(a).

The defendants have argued, and the plaintiffs have conceded, that individuals, who themselves are not the recipients of federal financial assistance, are not subject to liability under Title IX. Accordingly, these defendants are entitled to summary judgment on this cause of action.

In their second and third causes of action, labeled "Negligence" and "Negligent Infliction of Emotional Distress," respectively, the Glasgows have complained about certain actions of these defendants and the damages allegedly suffered by R.G. as a result thereof. Again, the individual defendants have argued that they are not liable on such claims, and the plaintiffs have so conceded. Accordingly, the movants are entitled to judgment as a matter of law on these two causes of action.

In their fourth cause of action, the Glasgows have contended that R.G. had a property interest in his continued education based on certain express and implied contractual obligations between the defendants and his parents. This cause of action is grounded upon Oklahoma's compulsory school attendance laws.

The defendants have contended that neither the state constitution nor any state statute supports such a cause of action against individuals, and the plaintiffs have not disputed the same. Accordingly, the Court finds the seven movants are entitled to summary judgment on this claim.

5

In their fifth cause of action, the Glasgows have sought relief under title 42, section 1983 of the United States Code, and they have contended that the defendants interfered with R.G.'s property and liberty interests guaranteed by the fourteenth amendment to the United States Constitution.   The Glasgows have made no distinction between the procedural and substantive components of the due process clause, but rather have merely alleged in this cause of action that R.G. had a protectible property interest in his continued education pursuant to the state compulsory school attendance laws and a protectible liberty interest to be free from sexual assault and harassment. Despite the Glasgows' failure to identify with more specificity the basis of their alleged fourteenth amendment violation,[3] the Court has examined the plaintiffs' allegations under that case law which addresses the fourteenth amendment's guarantee of substantive due process.   "'The touchstone of . . . [that guarantee] is protection of the individual against arbitrary action of government,'" County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)(quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)), and the "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." Id. at 846.   In the latter situation, case law teaches "that only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense,'" id.

---

[3]In response to the defendants' challenge to this cause of action, the Glasgows have relied only upon one case and that case addressed individual liability for sexual harassment under the equal protection clause, and not the due process clause, of the fourteenth amendment.   See Murrell v. School District No. 1, 186 F.3d 1238, 1249 n.5 (10th Cir. 1999). The applicability of the equal protection clause is not dependent upon the existence of property or liberty interests. Nevertheless, in deciding the individual defendants' liability under section 1983, the Court has considered Murrell to the extent it is applicable and its requirement that to establish deliberate indifference to known sexual harassment, a state actor must participate in, or consciously acquiesce in, the sexual harassment. Id. at 1250.

(quoting Collins v. Harker Heights, 503 U.S. 115, 129 (1992)), and "the cognizable level of . . . [official] abuse of power [has been recognized] as that which shocks the conscience." Id.

In determining whether summary judgment is appropriate in this instance in favor of one or more of the individual defendants on this fifth cause of action, the Court does not evaluate the credibility of the witnesses, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), or "weigh the evidence and determine the truth of the matter . . . ." Id. at 249. Such "are jury functions." Id. at 255.

Rather, the Court's task is to decide "whether there is a genuine issue for trial . . . [and] there is no triable issue . . . unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," id. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In this connection, mere conclusions that an individual defendant played a role in the alleged constitutional violation is not sufficient. The plaintiffs must establish an "affirmative link" between the constitutional deprivation and a defendant; that is to say, a particular defendant may only be held liable under section 1983 based upon his or her own "'personal participation, his [or her] control or direction, or his [or her] failure to supervise.'" Ledbetter v. City of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003)(quoting Worrell v. Henry, 219 F.3d 1197, 1214 (10th Cir. 2000)).

The Glasgows, however, have not differentiated between and among the members of the School Board; they have submitted no evidence as to the personal participation or the individual actions of defendants Brooks, Whaley, Wilson, Yarbrough and Brown. Accordingly, in the absence of evidence of any role played by any School Board member in the events giving rise to this lawsuit, the Court finds summary judgment in favor of these five defendants on this cause of action is warranted.

As to the two remaining individual defendants, Myers and Castle, the Court has again examined the record to determine whether there is sufficient dispute over their own actions in failing protect R.G. from D.H. (or his friends) to preclude summary judgment under relevant case law.  In this connection, "[n]ormally, 'state actors are liable only for their own acts, and not the violent acts of third parties.'" Christiansen v. City of Tulsa, 332 F.3d 1270, 1279 (10th Cir. 2003)(quoting Armijo v. Wagon Mound Public Schools, 159 F.3d 1253, 1260 (10th Cir. 1998)).  A state actor's "'failure to protect an individual against private violence simply does not constitute a violation of the [d]ue [p]rocess [c]lause . . . .'"  Id. (quoting DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 197 (1989)).

There are, however, two exceptions to this general rule: the "special relationship" doctrine and the "danger creation" theory."  Id. at 1279-80.  The "special relationship" doctrine comes into play ""'when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual . . . .'"'" Id. at 1280 (quoting Armijo, 159 F.3d at 1260 (quoting Liebson v. New Mexico Corrections Department, 73 F.3d 274, 276 (10th Cir. 1996))).  The plaintiffs have cited no case which holds that Oklahoma's compulsory school attendance laws create a special relationship sufficient to hold a

8

defendant liable in this case.  Instead, case law teaches that "'compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school.'"  Graham v. Independent School District No. I-89, 22 F.3d 991, 994 (10th Cir. 1994)(quoting Maldonado v. Josey, 975 F.2d 727, 732 (10th Cir. 1992))(other citations omitted);  e.g., Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996).  Thus, in the absence of a special relationship between R.G. and the individual defendants, even if, as the plaintiffs have alleged, these two defendants possessed "specific information which would mandate action[,] . . . the protections of the [d]ue [p]rocess [c]lause," 22 F.3d at 995, are not invoked. Accordingly, the Glasgows cannot establish a violation of substantive due process under this exception.

The second exception to the general rule, as indicated, is the "danger creation" theory.  Under this theory "'state officials can be liable for the acts of third parties where those officials "created the danger" that caused the harm.'" Christiansen, 332 F.3d at 1281 (quoting Seamons, 84 F.3d at 1236).  It is not enough under this theory for a plaintiff to show that a state actor may have been aware of the danger confronting the plaintiff; a plaintiff must show that the defendant played a part in the creation of the danger or rendered the plaintiff more vulnerable to the danger.

The Tenth Circuit has devised a six-part test to be employed when considering danger creation claims:

> "'To make out a proper danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when

9

viewed in total, is conscience shocking.'"

Id. (quoting Gonzales v. City of Castle Rock, 307 F.3d 1258, 1263 (10th Cir. 2002)); see

e.g., Sutton v. Utah State School for the Deaf and Blind, 173 F.3d 1226, 1238-39 (10th Cir.

1999)(claims must be predicated on reckless or intentionally injury-causing state action

which shocks the conscience).

    The Tenth Circuit has found that

> "an 'act is reckless when it reflects a wanton or obdurate disregard or
> complete indifference to risk,' and that reckless intent is established if the
> state 'actor was aware of a known or obvious risk that was so great that it
> was highly probable that serious harm would follow and he or she proceeded
> in conscious and unreasonable disregard of the consequences.'"

Sutton, 173 F.3d at 1238 (quoting Medina v. City and County of Denver, 960 F.2d 1493,

1496 (10th Cir. 1992)).

    Upon review of the evidence under these standards, the Court finds the plaintiffs

have failed to show a genuine disagreement with regard to the conduct of defendant

Myers. "[F]ocus[ing] on the deliberateness of . . . [Myers'] conduct,"   332 F.3d at 1281,

as it is required to do, the Court finds that there is little, if any, evidence to show that Myers'

own conduct[4] "'put [R.G.] . . . at substantial risk of serious, immediate, and proximate

harm,'" 332 F.3d at 1281 (quoting Gonzales, 307 F.3d at 1263), or that Myers' "'conduct,

when viewed in total, [was] . . . conscience shocking.'" Id. Accordingly, the Court finds

Myers is entitled to summary judgment on the plaintiffs' fifth cause of action.

_____

[4]Myers "'may not be held liable under a theory of respondeat superior.'" Ledbetter v. City
of Topeka, 318 F.3d 1183, 1187 (10th Cir. 2003)(quoting Worrell v. Henry, 219 F.3d 1197, 1214
(10th Cir. 2000)). Thus, absent evidence of Myers' "'personal participation, his control or direction,
or his failure to supervise,'" id. (quoting Worrell, 219 F.3d at 1214), he cannot be held liable for the
actions or inaction of any coach or teacher who did not advise him of, or report D.H.'s behavior.

As to defendant Castle, the Court likewise finds that the plaintiffs have failed to show a sufficient conflict in the evidence to defeat Castle's request for summary judgment on this cause of action.   In an attempt to show that the risk posed by D.H. to R.G. was known or obvious, the plaintiffs have relied first upon information obtained from an unidentified caller to the school's "Safe Call Helpline" on August 21, 2002.   The caller reported that D.H. was "completely out of control," Plaintiffs' Exhibit 4, that "he makes guys feel very small," id., that "he makes guys feel threatened for their physical well being," id., and that "he has a . . . habit . . of . . . hitting guys in the . . . privates." Id.   The plaintiffs have also relied upon a Resolution Agreement executed by the School District and the United States Department of Education, Office for Civil Rights.   The document was generated in September 2000 allegedly after an incident involving D.H. and another student, whereby the School District agreed to "continue to provide for the prompt and equitable resolution of complaints alleging disability and sexual harassment," Plaintiffs' Exhibit 6, and to provide "continuing training for all employees dealing with issues of gender/sexual harassment and disability harassment." Id.

While such evidence may arguably establish that Castle recognized a risk prior to September 2002, it does not demonstrate that Castle actually intended to expose R.G. to that risk without regard to the consequences to him.   Instead, the undisputed evidence demonstrates that the day after the anonymous telephone call was made, Castle met with both D.H. and D.H.'s mother and advised them that the reported behavior would not be tolerated.   Likewise, the Resolution Agreement was an attempt to correct problems, rather than to disregard or be deliberately indifferent to them.

The plaintiffs have complained that Castle should have suspended D.H. or recommended that D.H. be placed in an alternative school. The fourteenth amendment's due process clause, however, "'"is not a guarantee against incorrect or ill-advised [government] decisions."'" Christiansen, 332 F.3d at 1282 (quoting Uhlrig v. Harder, 64 F.3d 567, 573 (10th Cir. 1995)(quoting Collins, 503 U.S. at 129)). Rather, "[t]he danger creation theory . . . focuses on the affirmative actions of the state in placing the plaintiff in harm's way." Currier v. Doran, 242 F.3d 905, 919 (10th Cir. 2001). Case law is clear that a failure to act that does not decrease or eliminate a pre-existing danger is not affirmative conduct. Although there may be some disagreement about whether Castle's "efforts amounted to the correct response, they reflect that [he] . . . did not intend to harm [R.G.] . . . or unreasonably . . . place him at risk of harm." Seamons, 84 F.3d at 1236. Indeed, the plaintiffs have not presented any evidence that demonstrates that Castle's conduct, even if it did not reduce the danger posed by D.H., created or enhanced that danger or put R.G. "'at substantial risk of serious, immediate, and proximate harm.'" Christiansen, 332 F.3d at 1281 (quoting Gonzales, 307 F.3d at 1263). Furthermore, the Court finds Castle's conduct about which the Glasgows have complained fails to satisfy the "shock the conscious" standard; such conduct does not "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscious shocking." Ulhrig, 64 F.3d at 574.[5]

---

[5]The Court is mindful that this "constitutional concept of conscience shocking," County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998), is not "subject to mechanical application . . . ." Id. at 850. Conduct "that shocks in one environment may not be so patently egregious in another, and . . . [the Court's] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." Id.

In their sixth cause of action, the Glasgows have sought relief under Title II of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12132. This statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id.

The defendants have argued, and the plaintiffs have agreed, that individual defendants may not be held liable under this statute. Accordingly, the movants are entitled to summary judgment on this cause of action.

In their final cause of action, the Glasgows have alleged that the defendants conspired to violate R.G.'s civil rights. In light of the plaintiffs' request that this cause of action be dismissed without prejudice, the Court has not considered the defendants' entitlement to summary judgment on such claim.

Based upon the foregoing, the Court finds defendants Myers, Castle, Brooks, Whaley, Wilson, Yarbrough and Brown are entitled to judgment as a matter of law on all causes of action asserted against them save the plaintiffs' cause of action for conspiracy, but finds they are entitled to dismissal of that cause of action. Accordingly, the Court

(1) GRANTS the Motion for Summary Judgment filed on March 31, 2005, by all defendants in their individual capacities as to the plaintiffs' first, second, third, fourth, fifth and sixth causes of action asserted in the amended complaint;

(2) DISMISSES without prejudice the plaintiff's seventh cause of action asserted against these defendants; and

(3) ADVISES the parties that judgment pursuant to Rule 58, F.R.Civ.P., shall be

13

entered once all causes of action against all defendants have been resolved.

ENTERED this 25th day of May, 2005.

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE